1   MATTHEW A. HODEL (SB# 93962)
    mhodel@hbwllp.com
2   MICHAEL S. LEBOFF (SB# 204612)
    mleboff@hbwllp.com
3   HODEL BRIGGS WINTER LLP
    8105 Irvine Center Drive, Suite 1400
4   Irvine, CA  92618
    Telephone:  (949) 450-8040
5   Facsimile:  (949) 450-8033

6   Attorneys for Defendants
    DONALD J. TRUMP, THE TRUMP
7   ORGANIZATION, INC. and TRUMP
    GOLF MANAGEMENT LLC

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11  STEPHEN HENRY, an individual, and        [Assigned to the Hon. Dale S. Fischer]
    INTERNATIONAL GOLF
12  PRODUCTIONS, LLC, a California           Case No. CV10-5004 DSF (JCGx)
    Limited Liability Company,
13                                           **NOTICE OF MOTION AND
                   Plaintiff,                MOTION BY DEFENDANTS
14                                           DONALD J. TRUMP, THE TRUMP
    vs.                                      ORGANIZATION, INC. AND
15                                           TRUMP GOLF MANAGEMENT
    DONALD TRUMP, an individual;             LLC:**
16  TRUMP GOLF PROPERTIES, L.L.C.,
    a New Jersey limited liability company,  **(1) TO DISMISS FOR LACK OF
17  THE TRUMP ORGANIZATION,                      PERSONAL JURISDICTION;
    INC., a New York corporation; DOES           AND**
18  1 – 50, Inclusive,
                                             **(2) TO DISMISS FOR FAILURE TO
19                 Defendants.                    STATE A CLAIM**

20                                           **MEMORANDUM OF POINTS AND
                                             AUTHORITIES**
21
                                             **[Fed. R. Civ. Proc. 12(b)(2), (6)]**
22
                                             <u>Hearing</u>
23                                           Date:           August 30, 2010
                                             Time:           1:30 p.m.
24                                           Courtroom:      840

25                                           Complaint filed:   June 11, 2010
                                             Trial date:        Not Set
26
                                             **[Declarations of Donald J. Trump and
27                                           Donald Trump, Jr. and Request for
                                             Judicial Notice Filed Separately]**
28

                    MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

3         PLEASE TAKE NOTICE that on August 30, 2010, at 1:30 p.m. in

4    Courtroom 840 of the above-captioned court located at 255 East Temple Street, Los

5    Angeles, CA 90012, Defendants Donald J. Trump, The Trump Organization, Inc.

6    and Trump Golf Management LLC (collectively "Defendants") will and hereby do

7    move for an order dismissing the complaint pursuant to Federal Rule of Civil

8    Procedure 12(b)(2) for a lack of personal jurisdiction.

9         PLEASE TAKE FURTHER NOTICE that Defendants will and hereby do

10   move, at the same time and location, for an order dismissing the complaint, and

11   each claim for relief sought to be stated in the complaint, pursuant to Federal Rule

12   of Civil Procedure 12(b)(6) for failure to state a claim.

13        These motions are made following the Rule 7-3 conference of counsel which

14   took place on July 13, 2010.

15        These motions are based on this notice of motion and motion, the attached

16   memorandum of points and authorities, the request for judicial notice filed with

17   these papers, the arguments of counsel, and such other matters as the Court may

18   consider in its discretion.  The motion to dismiss for lack of personal jurisdiction is

19   further based on the Declarations of Donald J. Trump and Donald Trump, Jr. filed

20   concurrently with these papers.

21

22   DATED:  August 2, 2010              HODEL BRIGGS WINTER LLP
                                          MATTHEW A. HODEL
23                                        MICHAEL S. LEBOFF

24

25                                        By: /s/ Matthew A. Hodel
                                               MATTHEW A. HODEL
26
                                          Attorneys for Defendants
27                                        DONALD J. TRUMP, THE TRUMP
                                          ORGANIZATION, INC. and TRUMP
28                                        GOLF MANAGEMENT LLC

                                    - 1 -

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................... 1

II.    SUMMARY OF ALLEGATIONS ................................................. 2

III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THERE
       IS NO PERSONAL JURISDICTION OVER DEFENDANTS IN
       CALIFORNIA ............................................................................... 5

       A.    Standards For Personal Jurisdiction ................................. 5

       B.    There Is No General Jurisdiction .................................... 6

       C.    There Is No Specific Jurisdiction ................................... 8

             1.    No Defendant Has Purposefully Availed Itself of
                   the Privilege of Conducting Business in California ......... 8

             2.    The Claims In the Complaint Do Not Arise Out
                   of Any California-Related Activity by Defendants ......... 10

             3.    The Exercise of Jurisdiction in California Would
                   be Unreasonable ................................................ 10

IV.    THE COMPLAINT SHOULD BE DISMISSED IN ITS
       ENTIRETY FOR FAILING TO STATE A CLAIM ......................... 11

       A.    Federal Pleading Standards ............................................. 11

       B.    Plaintiffs Fail To State A Claim For Breach Of Implied
             Contract ........................................................................ 11

             1.    Plaintiffs' Implied Contract Claim Is Barred By Its
                   Unsolicited, Unprotected Disclosure to Defendants ......... 11

             2.    Plaintiffs Fail to Allege Facts Showing A Plausibility
                   of Success On Their Implied Contract Claim .................. 13

       C.    Plaintiffs Fail To State A Claim For Breach of Fiduciary Duty .. 14

       D.    Plaintiffs Fail To State A Claim For Misappropriation Of
             Intangible Property ........................................................ 15

       E.    Plaintiffs Fail To State A Claim For Unjust Enrichment ............ 16

       F.    Plaintiffs Fail To State A Claim For *Quantum Meruit* ............. 17

       G.    Plaintiffs Fail To State A Claim For An Accounting .................. 17

       H.    Plaintiffs Fail To State A Claim For Unfair Business
             Practices Under Section 17200 ......................................... 18

i

1

I.     Plaintiffs Fail To State A Claim For Declaratory Relief.............. 19

V.    CONCLUSION.......................................................................... 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF AUTHORITIES

**STATE CASES**                                                    **PAGE(S)**

Advanced Choices, Inc. v. Department of Health Services,
    182 Cal. App. 4th 1661 (2010) .....................................................   17

Buckland v. Threshhold Enterprises, Ltd.,
    155 Cal. App. 4th 798 (2007) .......................................................   18

Citizens of Humanity, LLC v. Costco Wholesale Corp.,
    171 Cal. App. 4th 1 (2009) ..........................................................   18, 19

Desny v. Wilder,
    46 Cal. 2d 715 (1956) ...................................................   2, 12, 15, 16

Durell v. Sharp Healthcare,
    183 Cal. App. 4th 1350 (2010) ....................................................   16

Faris v. Enberg,
    97 Cal. App. 3d 309 (1979)..........................................................   12, 16

Gunther-Wahl Prods v. Mattel, Inc.,
    104 Cal. App. 4th 27 (2002) ....................................................   2, 12, 15

Janis v. Cal. State Lottery Comm'n,
    68 Cal. App. 4th 824 (1998) .......................................................   17

Klekas v. EMI Films, Inc.,
    150 Cal. App. 3d 1102 (1984) ....................................................   15, 17

Korea Supply Co v. Lockheed Martin Corp.,
    29 Cal. 4th 1134 (2003) ..............................................................   18

Mann v. Columbia Pictures, Inc.,
    128 Cal. App. 3d 628 (1982)........................................................   16

McKell v. Washington Mutual Bank,
    142 Cal. App. 4th 1457 (2006) ...................................................   16, 17

Teselle v. McLoughlin,
    173 Cal. App. 4th 156 (2009) .....................................................   17

Weitzenkorn v. Lesser,
    40 Cal. 2d 778 (1953) ..................................................................   16

**FEDERAL CASES**                                                  **PAGES(S)**

Allstar Marketing Group, LLC v. Your Store Online, LLC,
    666 F. Supp. 2d 1109 (C.D. Cal. 2009) .....................................   7

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009)................................................................   11, 13

i

**FEDERAL CASES (Continued)**                                                        **PAGES(S)**

Brand v. Menlove Dodge,
    796 F. 2d 1070 (9th Cir. 1986)..................................................      5

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)...............................................................    5, 6, 8

Concat LP v. Unilever, PLC,
    350 F. Supp. 2d 796 (N.D. Cal. 2004) ...................................      7

County of Santa Clara v. Astra United States, Inc.,
    428 F. Supp. 2d 1029 (N.D. Cal. 2006) .................................     17

Doe v. Unocal Corp.,
    248 F. 3d 915 (9th Cir. 2001)................................................      6

Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co.,
    907 F. 2d 911 (9th Cir. 1990)...............................................      6

Gonzalez v. Proctor and Gamble Co.,
    247 F.R.D. 616 (S.D. Cal. 2007) ..........................................     18

Gray & Co. v. Firstenberg Machinery Co., Inc.,
    913 F. 2d 758 (9th Cir. 1990)...............................................     8, 9

Helicopteros Nacionales de Columbia v. Hall,
    466 U.S. 408 (1984)..............................................................      6

International Shoe v. Washington,
    326 U.S. 310 (1945)..............................................................     5, 6

Jensen v. Quality Loan Service Corp.,
    __ F.Supp.2d __, 2010 WL 1136005 (E.D. Cal.
    Mar. 22, 2010) ....................................................................     19

Moss v. U.S. Secret Service,
    572 F. 3d 962 (9th Cir. 2009)...............................................     11

Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.,
    671 F. Supp. 1525 (C.D. Cal. 1987) ......................................      7

Nicosia v. De Rooy,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) ...................................      2

Osei v. Countrywide Home Loans,
    692 F. Supp. 2d 1240 (E.D. Cal. 2010)..................................     13

Panavision Int'l, L.P. v. Toeppen,
    141 F. 3d 1316 (9th Cir. 1998)..............................................     10

Pebble Beach Co. v. Caddy,
    453 F. 3d 1151 (9th Cir. 2006)..............................................      8

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**FEDERAL CASES (Continued)**                                                   **PAGES(S)**

Peterson v. Kennedy,
    771 F. 2d 1244 (9th Cir. 1985)..................................................   9

Philips Med. Capital, LLC v. Medical Insights Diagnostic Center, Inc.,
    471 F. Supp. 2d 1035 (N.D. Cal. 2007)......................................   19

Rocke v. Canadian Auto Sport Club,
    660 F. 2d 395 (9th Cir. 1981)..................................................   5

Selby v. New Line Cinema Corp.,
    96 F. Supp. 2d 1053 (C.D. Cal. 2000) ........................................   13

Sher v. Johnson,
    911 F. 2d 1357 (9th Cir. 1990)..................................................   6

Tuazon v. R.J. Reynolds Tobacco Co.,
    433 F. 3d 1163 (9th Cir. 2006)..................................................   6

Zella v. E.W. Scripps Co.,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ......................................   15, 16

**STATUTES**                                                                    **PAGE(S)**

California Business & Professions Code § 17200 ................................   18

California Business & Professions Code § 17204 ................................   18

California Civil Code § 980 ..............................................................   15

California Civil Procedure Code § 410.10............................................   5

iii

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Plaintiffs allege that they "originated" the idea of televising match play golf

4

in April 2004, and that the Defendants misappropriated that idea six years later

5

when the Golf Channel first aired "Donald J. Trump's Fabulous World of Golf."

6

The complaint, however, should be dismissed for two independent reasons.  First,

7

there is no personal jurisdiction over Defendants in California.[1]  Donald J. Trump is

8

a New York resident and does not own any real estate or have any employees or

9

offices here.  The Trump Organization, Inc. is a New York corporation

10

headquartered in New York City.  It maintains no offices in California, has no

11

employees in California, owns no property in California, and is not licensed to do

12

business in California.  The same is true for Trump Golf Management LLC.

13

Furthermore, the complaint does not allege any facts showing that any Defendant

14

directed conduct towards California that gave rise to the complaint.  Hence, there is

15

no basis for hauling these out-of-state residents into California, and the case against

16

them should be dismissed for lack of personal jurisdiction.

17

Second, the factual allegations do not plausibly support any basis of liability

18

against the Defendants.  The complaint does not allege that Plaintiffs ever had any

19

direct agreement with any Defendant and, in fact, does not even allege that

20

Plaintiffs had any direct interaction with Defendants whatsoever.  Although

21

Plaintiffs claim there was an "implied-in-fact contract," there are no facts pled to

22

support such a conclusion.  To the contrary, the complaint alleges that on two

23

separate occasions, Plaintiffs merely sent their idea to Defendants – completely

24

unsolicited – and received no response to either inquiry.  The law in California is

25

very clear that "[t]he idea man who blurts out his idea without having first made his

26

---

27

[1] Although Plaintiffs named Trump Golf Properties, LLC as a defendant, there is no such entity with that name.  (Declaration of Donald Trump, Jr. ("Trump Jr. Decl.") at ¶ 5)

28

1

1  bargain has no one but himself to blame for the loss of his bargaining power.  The

2  law will not in any event, from demands stated subsequent to the unconditioned

3  disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for

4  its previous disclosure." *Gunther-Wahl Prods. v. Mattel, Inc*, 104 Cal.App.4th 27,

5  38 (2002) (quoting *Desny v. Wilder*, 46 Cal.2d 715, 738-39 (1956)).  Accordingly,

6  for this and other reasons, Plaintiffs have failed to plead a valid claim for relief

7  against Defendants, and therefore, the complaint should be dismissed for failing to

8  state a claim upon which relief can be granted.

9  **II.    SUMMARY OF ALLEGATIONS**

10            According to the complaint, jurisdiction is proper because "the parties

11  executed the Agreement at issue in the County of Los Angeles, State of California,

12  and all breaches occurred in this jurisdiction." (Compl. at ¶ 8)  Such boilerplate

13  pleading is insufficient.  It is also legally irrelevant, and the Court should not

14  "assume the truth of conclusory allegations." *Nicosia v. De Rooy*, 72 F.Supp.2d

15  1093, 1097 (N.D. Cal. 1999).  The complaint does not allege the existence of any

16  written agreement, only an implied agreement, and fails to explain how or when

17  any of the Defendants "executed" this implied agreement in California.  Likewise,

18  although Plaintiffs allege the breach occurred here, they do not allege that

19  Defendants committed any affirmative acts in California or were required to render

20  any performance in this state.

21            Plaintiffs allege that in April 2004 they developed a proposal for a series of

22  made-for-television golf events, designed to feature players in match play

23  competition to showcase golf courses and real estate developments.  (Compl. at ¶

24  10)  Plaintiffs do not allege anything novel about this idea, and certainly, match

25  play golf has existed long before Plaintiffs claim that they conceived of the idea.[2]

26  _____

27  [2] By way of a few examples, in August 1999, in the "Showdown at Sherwood," Tiger
    Woods and David Duval competed in a match play event broadcast live in primetime by

28  ABC.  A year later, in the "Battle of Bighorn," Tiger Woods faced Sergio Garcia in
                                                                      (continued...)

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    Plaintiffs allege that in April 2004 they sent Defendants an unsolicited

2  "executive summary" of their idea. (Compl. at ¶ 12)  Plaintiffs allege that

3  Defendants never responded.  About a year later, in May 2005, Plaintiffs sent

4  Defendants another unsolicited summary of the idea; and again, Defendants never

5  responded. (*Id.* at ¶¶ 13-14)  So, in late 2005, Plaintiffs negotiated with another

6  company (Andalusia) to hold the event at its golf course. (*Id.* at ¶ 14)

7    Thereafter, in the first half of 2006, Plaintiffs entered into a contract with a

8  third-party, U.S. Pro Golf Tour, Inc. ("USPGT"), to televise the Andalusia event.

9  (*Id.* at ¶ 17)  The event, named the "Gauntlet," was to be designated a "major

10  championship" of the U.S. Pro Golf Tour and USPGT would define the purses.

11  (*Id.*)  Then, with the Andalusia agreement in place, USPGT "brought its existing

12  relationship with [Defendants] to the table in negotiating the rights" to the event.

13  (*Id.* at ¶ 18)  During the negotiation period, R. Thomas Kidd, president of the

14  USPGT, represented to Plaintiffs that, while it did not have Defendants officially

15  contracted for this event, USPGT had three other golf tournaments that they

16  contracted with Defendants to act as the official title sponsor. (Compl. at ¶ 19)

17  Note well, this representation came from Kidd and USPGT – not Defendants.

18    The complaint further alleges Kidd – again not Defendants – represented that

19  he and his business partner, Andy Batkin had already contacted Ashley Cooper of

20  (...continued)

21  another primetime event televised by ABC.  In fact, both of these events were part of
ABC's Monday Night Golf that consisted of a series of seven, made-for-television, match

22  play golf matches that aired in primetime from 1999 to 2005.  As evidenced by the events'
titles, one aspect of these events was to highlight the courses on which they were played.

23  In addition, Shell's Wonderful World of Golf was a televised series of golf matches that
ran from 1962-1970 and again from 1994-2003.  Again, one aspect of these events was to

24  promote the locations where the matches were played.  As far back as 1926, Walter Hagen

25  and Bobby Jones competed in a match play event billed as the "World Championship."
That event was to be played at Hagen's and Jones' respective clubs in Florida where they

26  both had real estate interests.  The event was intended to draw a great deal of spectators to

27  the courses where the event would be played, and those spectators would mean potential
sales leads. (*See* Defendants' Request for Judicial Notice)

28

3

1    Trump Golf Properties about the event.  (*Id.* at ¶ 21)  "As part of those talks, Kidd

2    [not Defendants] told Henry that USPGT has confirmed with Cooper that Gauntlet

3    would become the fourth Trump event in addition to the three that USPGT already

4    had contracted with Trump to sponsor."  (*Id.*)

5          On the day before Plaintiffs and USPGT signed their agreement, Kidd – not

6    Defendants – advised Henry that The Trump Organization agreed to lend the

7    Trump name and sponsorship to Gauntlet.  (*Id.* at ¶ 22)  The Agreement, to which

8    none of the Defendants are alleged to be a party and is not attached to the

9    complaint, gave USPGT the right to offer the name rights to Trump and even move

10   the event to the Trump National course *in Florida*.  (*Id.* at ¶ 22)  On June 18, 2006,

11   Plaintiffs received an email from Kidd – not Defendants – stating that Trump

12   *agreed with USPGT* to include the Gauntlet as a Trump event.  (*Id.* at ¶ 24)

13         Relying on Kidd's representations, Plaintiffs allege that they – not

14   Defendants – changed the name of the event to the "Trump World Match Play

15   Challenge."  (*Id.* at ¶ 25)  On June 30, 2006, the USPGT issued a press release

16   announcing a "strategic partnership" with Mr. Trump.  (*Id.* at ¶ 26)  Notably, the

17   press release, which came from USPGT and not Defendants, is alleged to announce

18   a "strategic partnership" between USPGT and Mr. Trump – there is no allegation

19   that Plaintiffs were a part of this alleged partnership or that this alleged partnership

20   included producing or hosting any future match play events allegedly conceived by

21   Plaintiffs.  (*Id.*)  Nor is there any allegation that Defendants were aware of

22   Plaintiffs' alleged involvement.

23         Thereafter, Plaintiffs allege that they – not Defendants – nationally marketed

24   the "Trump World Match Play Challenge" with the first match scheduled for play

25   in March 2007 at The Trump International Golf Club in *Palm Beach, Florida*.  (*Id.*

26   at ¶ 27)  In December 2006, players were invited to participate in the event by way

27   of a letter that described Donald Trump as the host of the event.  (*Id.* at ¶ 28)

28

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1   Inevitably, the agreement between Plaintiffs and USPGT fell apart.  (Compl. at ¶

2   29)

3          Then, nothing happened for over three years, until April 12, 2010, when the

4   Golf Channel debuted "Donald J. Trump's Fabulous World of Golf."  (Compl. at ¶

5   30)  According to the complaint, without specifying how, this event is "virtually

6   identical" to the concept Plaintiffs allegedly conceived and marketed to Defendants

7   from 2004 to 2006.[3]  (Id. at ¶ 31)

8   **III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THERE IS**

9        **NO PERSONAL JURISDICTION OVER DEFENDANTS IN**

10       **CALIFORNIA**

11       **A.    Standards For Personal Jurisdiction**

12         To be subject to the personal jurisdiction of this court, Defendants must have

13  certain "minimum contacts" with California, such that the assertion of judicial

14  power over these non-resident Defendants comports with traditional notions of fair

15  play and substantial justice.  *See International Shoe v. Washington*, 326 U.S. 310,

16  316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).  In a case based

17  on diversity jurisdiction, like this one, the federal court will apply the personal

18  jurisdiction rules of the forum state.  *Brand v. Menlove Dodge*, 796 F.2d 1070,

19  1072-73 (9th Cir. 1986).  California's long-arm statute is co-extensive with the

20  United States Constitution's Due Process Clause.  *See* Cal. Civ. Proc. Code §

21  410.10; *Rocke v. Canadian Auto Sport Club*, 660 F.2d 395, 398 (9th Cir. 1981).

22         Within the "minimum contacts" doctrine, there are two bases of jurisdiction:

23  general jurisdiction and limited or specific jurisdiction.  General jurisdiction exists

24

25  [3] The two concepts are actually quite different.  According to the complaint, Plaintiffs'
    "idea" was to be a "major championship" of a minor professional golf tour.  Conversely,
26  "Donald J. Trump's Fabulous World of Golf" is not a professional event, but instead,
    often features celebrities, such as George Lopez v. Oscar De La Hoya; Jerome Bettis v.
27  Julius Erving; and Mark Wahlberg v. Kevin Dillon.

28

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    for non-resident defendants whose commercial activities impact California on a

2    substantial "continuous and systematic" basis. *Helicopteros Nacionales de*

3    *Columbia v. Hall*, 466 U.S. 408, 414-15 (1984). If general jurisdiction exists, then

4    the non-resident may be sued in the forum state even if the case is unrelated to its

5    California contacts. Conversely, for limited or special jurisdiction, the claim for

6    relief must arise out of or be related to the non-resident defendant's California

7    contacts and the exercise of personal jurisdiction must be reasonable. *See Burger*

8    *King. Corp., supra,* 471 U.S. at 477-78.

9            Plaintiffs have the burden of establishing personal jurisdiction. *See, e.g.,*

10    *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Farmers Ins. Exchange v.*

11    *Portage La Prairie Mutual Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). Where, as

12    here, there are multiple non-resident defendants, the court must assess jurisdiction

13    separately for each defendant. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir.

14    1990) ("[J]urisdiction depends only upon each defendant's relationship with the

15    forum."). As shown below, Plaintiffs cannot meet their burden for any Defendant.

16    **B.     There Is No General Jurisdiction**

17            "The standard for general jurisdiction is high; contacts with a state must

18    approximate physical presence." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d

19    1163, 1169 (9th Cir. 2006). A court may exercise general jurisdiction only where

20    "continuous corporate operations within a state [are] thought so substantial and of

21    such a nature as to justify suit against [the defendant] on causes of action arising

22    from dealings entirely distinct from those activities." *Id.* (quoting *International*

23    *Shoe, supra*, 326 U.S. at 318) . "Put another way, a defendant must not only step

24    through the door, it must also sit down and make itself at home." *Id.* Here, there is

25    no basis for asserting general jurisdiction over Defendants.

26            Donald Trump is a resident of the City and State of New York. (Declaration

27    of Donald J. Trump ("Trump Decl.") at ¶ 2) He does not personally own any real

28    property in the state, have any employees in the state or maintain an office here.

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    (*Id.*)  Moreover, even if Mr. Trump owns interests in various companies that do

2    business in California, those entities' California contacts cannot be imputed to Mr.

3    Trump for jurisdictional purposes.  *See, e.g., Allstar Marketing Group, LLC v. Your*

4    *Store Online, LLC*, 666 F.Supp.2d 1109, 1119-1120 (C.D. Cal. 2009) ("The mere

5    fact that a corporation is subject to local jurisdiction does not necessarily mean its

6    nonresident officers, directors, agents and employees are suable locally as well."

7    (internal quotations omitted).  Accordingly, Mr. Trump is not subject to general

8    jurisdiction in California.

9         The Trump Organization is a New York corporation headquartered in New

10   York City.  (Trump Jr. Decl. at ¶ 2)  It has no offices, employees or property in

11   California.  (*Id.* at ¶ 3)  It is not licensed to do business in California and does not

12   have an agent for service of process here.  (*Id* at ¶ 4)  On these facts, The Trump

13   Organization does not have such continuous and systematic corporate operations

14   within California as would justify general jurisdiction.

15        The same is true for Trump Golf Management LLC, which is a limited

16   liability company organized under the laws of New York and headquartered in that

17   state.  (Trump Jr. Decl. at ¶2)  It does not do any business in California.  (*Id* at ¶4)

18   It owns no property in this state, maintains no offices here, and does not have any

19   California employees.  (*Id* at ¶3.)  As such, there cannot be general jurisdiction in

20   California over this entity.

21        Moreover, even if these entity defendants had subsidiaries that do business in

22   California – even wholly owned subsidiaries – their status as a parent corporation

23   would not justify a finding of general jurisdiction.  *See, e.g., Concat LP v. Unilever,*

24   *PLC*, 350 F.Supp.2d 796, 811 (N.D. Cal. 2004) ("[T]he existence of a relationship

25   between a parent company and its subsidiaries is not in itself sufficient to establish

26   personal jurisdiction over the parent on the basis of the subsidiaries' minimum

27   contacts with the forum."); *Newport Components, Inc. v. NEC Home Electronics*

28   *(U.S.A.), Inc.*, 671 F.Supp. 1525, 1534 (C.D. Cal. 1987) ("It is firmly established

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1  that a non-resident parent corporation is not subject to personal jurisdiction based

2  solely on the independent activities of its wholly-owned subsidiary.").

3  Consequently, there is no basis for general jurisdiction over Defendants.

4     **C.   There Is No Specific Jurisdiction**

5        Plaintiffs must establish the following three elements for specific

6  jurisdiction: (1) defendant purposefully availed itself of the privilege of conducting

7  business in California; (2) the claim arises out of or is related to defendant's forum-

8  related activities; and (3) the exercise of jurisdiction is reasonable. *See Pebble*

9  *Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  If any one of these three

10  elements is not satisfied, then the exercise of personal jurisdiction in California will

11  violate due process. *Id.*

12        **1.   No Defendant Has Purposefully Availed Itself of the**

13            **Privilege of Conducting Business in California**

14        In cases arising out of a contractual relationship, the fact that a contract exists

15  with a California resident – without more – does not establish the requisite

16  minimum contacts. *See Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d

17  758, 760 (9th Cir. 1990) (citing *Burger King*).  Rather, "[p]urposeful availment

18  requires that the defendant engage in some form of affirmative conduct allowing or

19  promoting the transaction of business within [California]." *Id.*  A defendant has

20  engaged in affirmative conduct if it "deliberately engaged in significant activities

21  within [California] or has created 'continuing obligations' between [itself] and

22  residents of the forum." *Id.*  Plaintiffs cannot make this showing.

23        In this case, there is no contractual relationship between Plaintiffs and

24  Defendants.  (Trump Decl. at ¶ 3; Trump Jr. Decl. at ¶ 6)  Indeed, only an implied

25  contract is alleged without facts that support such a conclusion.  Plaintiffs allege

26  they had a contract with USPGT – not Defendants – to televise a match play golf

27  event.  (Compl. at ¶ 17)  There is also an alleged "strategic partnership" between

28  USPGT and Mr. Trump to lend his name to one event to be held at The Trump

8

International Golf Club in Florida.  (*Id.* at ¶ 22)  But, there is no allegation of such a "strategic partnership" between Plaintiffs and Defendants.  Nor is there any allegation in the complaint suggesting that Mr. Trump, The Trump Organization or Trump Golf Management LLC engaged in any affirmative conduct in California. In fact, there is no conduct whatsoever by Defendants alleged to have taken place within this state.  Nor did the alleged implied-in-fact contract require these parties to perform any acts in California.  Even the golf event that Defendants allegedly agreed to host was to be held in *Florida*.  (Compl. at ¶ 27)

The only communication between Plaintiffs and Defendants alleged in the complaint involve the two unsolicited inquiries that Plaintiffs allegedly sent to Defendants – presumably in New York.[4]  (Compl. at ¶¶ 12-14)  Plaintiffs do not allege that Defendants sent a single correspondence to them in California or placed a single telephone call to the state concerning this matter.  Moreover, even if some correspondence between the parties did take place – and there is no evidence that it did – courts in this circuit consider such telephone and mail communications as insignificant "attenuated contacts" that are insufficient to establish personal jurisdiction.  *See, e.g., Gray*, 913 F.2d at 761; *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("Both this court and the courts of California have concluded that ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protections of the [forum state].").

Accordingly, with respect to the transaction at issue, Defendants have not purposefully availed themselves to the benefits of doing business in California.

---

[4] While we do not know exactly where those alleged communications were purportedly sent, because Defendants do not have a California mailing address, we know they were not sent to California.  (Trump Decl. at ¶ 2; Trump Jr. Decl. at ¶ 3)

9

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**2. The Claims In the Complaint Do Not Arise Out of Any California-Related Activity by Defendants**

The second requirement for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities. *See Panavision Int'l, L.P. v Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The Ninth Circuit employs the "but for" standard; that is, Plaintiffs would not have been injured "but for" Defendants' California conduct. *See id.* As noted above, none of the material allegations in the complaint are based on any California activity by the Defendants. Therefore, because the claims at bar do not arise out of Defendants' California activities, personal jurisdiction in this instance would be a violation of due process.

**3. The Exercise of Jurisdiction in California Would be Unreasonable**

Even if the first two requirements are met – and neither is here – in order to satisfy due process, the exercise of jurisdiction must be reasonable. *See Panavision Int'l, supra* 141 F.3d at 1322. In addressing the question of reasonableness, the court will consider seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See id.* at 1323. No one factor is dispositive; a court must balance all seven. *See id.*

In this instance, none of the above factors support the exercise of jurisdiction in California. First, as discussed above, Defendants' purposeful interjection in California, as it relates to the allegations in the complaint, was non-existent. Second, the burden on these out-of-state Defendants to travel across the country to litigate this dispute in California would be significant. Third, allowing Plaintiffs to

10

1  manufacture out-of-state jurisdiction against New York residents by sending

2  unsolicited mailings would conflict with the sovereignty of New York.  Fourth, as

3  noted above, because Defendants did not direct any activity towards California, this

4  state has little or no interest in litigating this dispute.  Fifth, there is no reason to

5  believe that California would provide the most efficient resolution of this dispute.

6  In fact, other than Mr. Henry, there does not appear to be any evidence or witnesses

7  located in or near California.  Sixth, California has no particular importance to

8  Plaintiffs' ability to obtain complete and effective relief.  Seventh, and finally, New

9  York is an adequate, alternative forum.

10       Consequently, for these reasons, the exercise of personal jurisdiction over

11  Defendants in California would be unreasonable.

12  **IV.   THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY**

13  **FOR FAILING TO STATE A CLAIM**

14       A.   **Federal Pleading Standards**

15  "[F]or a complaint to survive a motion to dismiss, the non-conclusory

16  'factual content,' and reasonable inferences from that content, must be plausibly

17  suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*,

18  572 F.3d 962, 969 (9th Cir. 2009).  It is not sufficient for Plaintiffs to merely recite

19  the elements of a particular claim for relief; instead, they must plead specific facts

20  that "allow the court to draw the reasonable inference that the defendant is liable for

21  the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

22  (2009)).  Applying this standard, none of Plaintiffs' claims are adequately pled.

23       B.   **Plaintiffs Fail To State A Claim For Breach Of Implied Contract**

24            1.   **Plaintiffs' Implied Contract Claim Is Barred By Its**

25                 **Unsolicited, Unprotected Disclosure to Defendants**

26       In their first claim for relief, Plaintiffs allege that Defendants breached an

27  "implied contract" that they would together, promote, create and televise a

28  primetime golf match play event and share in the profits of that event, accordingly.

11

1    (Compl. at ¶ 33)  As a threshold matter, the complaint specifically alleges that, on

2    two separate occasions in 2004 and 2005, Plaintiffs – without solicitation – sent

3    Defendants the project idea at issue in the complaint. (Compl. at ¶¶ 12-14)  The

4    law in California is very clear, however, that "[t]he idea man who blurts out his idea

5    without having first made his bargain has no one but himself to blame for the loss

6    of his bargaining power.  The law will not in any event, from demands stated

7    subsequent to the unconditioned disclosure of an abstract idea, imply a promise to

8    pay for the idea, for its use, or for its previous disclosure." *Gunther-Wahl Prods. v.*

9    *Mattel, Inc*, 104 Cal.App.4th 27, 38 (2003)  (quoting *Desny v. Wilder*, 46 Cal.2d

10   715, 738-39 (1956)) .

11          *Faris v. Enberg*, 97 Cal.App.3d 309, 323-24 (1979) is also instructive.

12   There, plaintiff alleged that he conceived of the idea for a sports quiz show.  He

13   then revealed the idea to Dick Enberg hoping to talk Enberg into agreeing to host

14   the show.  Enberg never hosted the show for plaintiff, and some time following his

15   meeting with plaintiff, Enberg and the other defendants put on a different sports

16   quiz show similar to plaintiff's idea.  As here, in disclosing his idea to Enberg,

17   plaintiff made no provisions preventing Enberg from disclosing the idea to others

18   and never mentioned to Enberg that the material was being provided in confidence.

19   *See id.* at 323.  As a result, the court found that the defendants could not be liable

20   for producing a similar show.  According to the court, "[w]e do not believe that the

21   unsolicited submission of an idea to a potential employee or potential business

22   partner, even if that person then passes the disclosed information to a competitor,

23   presents a triable issue of fact for confidentiality." *Id.* at 323-24.

24          Therefore, as above, having shared their project idea with Defendants

25   without any agreement or protection, Plaintiffs cannot now claim to have an

26   implied contract for the protections they previously failed to obtain.

27

28

                                         12

1          **2.     Plaintiffs Fail to Allege Facts Showing A Plausibility of**

2                       **Success On Their Implied Contract Claim**

3           To establish an implied-in-fact contract in the entertainment context, a

4    plaintiff must allege, among other things, that (i) "he or she disclosed the work to

5    an offeree for sale;" and (ii) "that under all circumstances attending the disclosure it

6    can be concluded that the offeree voluntarily accepted the disclosure knowing the

7    conditions on which it was tendered (i.e., the offeree must have the opportunity to

8    reject the attempted disclosure if the conditions were unacceptable.)" *Selby v. New*

9    *Line Cinema Corp.*, 96 F.Supp.2d 1053, 1056 (C.D. Cal. 2000).

10          Plaintiffs do not allege any *facts* showing the existence of an implied

11   contract.  Instead, this claim for relief is based entirely on conclusory allegations

12   concerning the existence of the contract.  "While legal conclusions can provide the

13   framework of a complaint,' neither legal conclusions nor conclusory statements are

14   themselves sufficient, and such statements are not entitled to a presumption of

15   truth." *Osei v. Countrywide Home Loans*, 692 F.Supp.2d 1240, 1245 (E.D. Cal.

16   2010) (quoting *Iqbal*).  In assessing the adequacy of the pleadings, the court must

17   disregard the conclusory statements, and instead identify those non-conclusory

18   factual allegations to determine whether those allegations plausibly give rise to an

19   entitlement to relief. *See id.*

20          When stripped of conclusions and reduced to the factual content pled, this

21   complaint contains no plausible basis for finding an implied contract.  As discussed

22   above, Plaintiffs' own allegations state that they sent Defendants their idea

23   completely unsolicited and without any prohibitions on disclosure or use.  (Compl.

24   at ¶¶ 12-14)  Other than those two unsolicited letters, Plaintiffs do not identify any

25   other communication or interaction with Defendants.   Plaintiffs cannot even

26   identify the parties to this alleged agreement, instead resorting only to the generic

27   terms "Plaintiffs" and "Defendants."  (*Id.* at ¶33)  In addition, at most, the

28   complaint shows that Defendants allegedly agreed to license the Trump name to a

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    single event at a golf course in Florida.  Plaintiffs already contracted with USPGT

2    to televise the event.  (*Id.* at ¶¶ 17, 23)  Defendants are alleged only to have agreed

3    to act as a sponsor.  Accordingly, there is no basis for finding an implied agreement

4    between the parties to jointly promote, create and televise a series of golf events.

5         Moreover, the scope of this alleged contract is not plausible.  Even if

6    Defendants agreed to lend their name to a single event, as is alleged in the

7    complaint, it does not follow that Defendants could never participate in televised

8    match play golf again without cutting Plaintiffs in on the deal.  "Donald J. Trump's

9    Fabulous World of Golf" aired in April 2010, six years after Plaintiffs sent their

10   first unsolicited "executive summary" and more than three years after "Plaintiffs'

11   event" was supposed to have taken place.  Even assuming the truth of the facts

12   alleged, there is certainly no basis to conclude that the implied contract would last

13   in perpetuity, particularly for an idea like match play golf that has been around

14   seemingly forever.[5]

15        **C.    Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty**

16        Plaintiffs' second claim for relief is for breach of fiduciary duty.  However,

17   they do not allege any facts that would support the existence of a fiduciary duty.

18   All Plaintiffs allege is that they entered into some form of undefined joint venture

19   with Defendants, and that joint venture gave rise to a fiduciary duty.  (Compl. at ¶¶

20   38, 39)  Again, Plaintiffs do not even identify which particular entities or

21   individuals were parties to this allege "joint venture," again resorting instead to

22   generic terms "Plaintiffs" and "Defendants."  (*Id.* at ¶ 38)

23        The Court must look past these conclusory allegations and focus on the

24   actual facts alleged.  Here, there are no factual allegations supporting the existence

25   of a joint venture.  There are no written or verbal agreements between the parties

26   _____

27   [5] See discussion in footnote 2, *supra*, of some of the many notable match play golf events
     in the past.

28

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1   (only a "implied-in-fact" contract which is not supported by the fact alleged) and,

2   according to the allegations in the complaint, all Defendants agreed to do was

3   sponsor a single golf event to be held in Florida.  (Compl. at ¶22)  This cannot

4   create a fiduciary duty.  Nor can Plaintiffs' unilateral act of sending unsolicited

5   proposals to Defendants, to which Plaintiffs acknowledge they never received a

6   response create a fiduciary relationship or joint venture.  *See Gunther-Wahl Prods.,*

7   *supra,* 104 Cal.App.4th at 38; *Desny, supra,* 46 Cal.2d 738-39.

8        Furthermore, even assuming a joint venture existed – and it did not –

9   Plaintiffs fail to allege any specific facts showing Defendants breached a fiduciary

10  duty.  According to the complaint, Defendants breached the fiduciary duty by

11  allowing the Golf Channel to air a match play golf program bearing the Trump

12  name.  But, that happened *six years* after this alleged joint venture was formed and

13  long after the alleged joint venture collapsed due to no fault of the Defendants.

14  (Compl. at ¶12, 29)  These allegations fall woefully short of the plausibility test.

15       **D.**     **Plaintiffs Fail To State A Claim For Misappropriation Of**

16              **Intangible Property**

17       In their third claim for relief, Plaintiffs seek to state a claim for

18  misappropriation of intangible property.  Generally, the law does not accord

19  individual property type protection to abstract ideas.  *See, e.g., Desny, supra,* 46

20  Cal.2d at 731  ("An idea is usually not regarded as property, because all sentient

21  beings may conceive and evolve ideas throughout the gamut of their powers of

22  cerebration and because our concept of property implies something which may be

23  owned and possessed to the exclusion of all other persons."); *Zella v. E.W. Scripps*

24  *Co.,* 529 F.Supp.2d 1124, 1133-34 (C.D. Cal. 2007) ("General plot ideas are not

25  protected by copyright law; they remain forever the common property of artistic

26  mankind."); *Klekas v. EMI Films, Inc.,* 150 Cal.App.3d 1102, 1111 (1984)

27  ("Abstract ideas, however, are not entitled to protection by a tort action for

28

15

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    plagiarism."); *Mann v. Columbia Pictures, Inc.*, 128 Cal.App.3d 628, 633 (1982)

2    (holding same).

3         In *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 789 (1953), the California Supreme

4    Court explained that the 1947 amendment to Civil Code § 980 eliminated

5    protection formerly given to "any product of the mind." As a result, "[t]he

6    Legislature has abrogated the rule of protectability of an idea." *Id.* In other words,

7    "[t]he idea alone, the bare, undeveloped story situation or theme, is not

8    protectable." *Id.* Accordingly, Plaintiffs fail to state a claim for misappropriation of

9    intangible property.

10        Moreover, even if an idea was somehow protectable, it would nonetheless

11   have to be an *original* idea. *See Weitzenkorn*, 40 Cal.2d at 786 ("Accordingly, if

12   the production attached to Weitzenkorn's complaint shows no evidence of

13   originality, she has no protectable property therein...."); *see also Zella*, 529

14   F.Supp.2d at 1133-34 (finding the generic elements of cooking and talk shows are

15   not protectable). In our case, there is nothing original about televised match play

16   golf. Therefore, the fact Plaintiffs' "idea" was not original provides an additional

17   and independent basis for dismissing the third claim for relief for misappropriation

18   of intangible property.

19        **E.    Plaintiffs Fail To State A Claim For Unjust Enrichment**

20        Plaintiffs' fourth claim for relief for unjust enrichment fails for a number of

21   reasons. First, as discussed above, Plaintiffs' abstract idea of televised golf is not a

22   protectable interest and, as set forth in *Desny* and *Faris, supra,* by "blurting out"

23   their idea to Defendants, without solicitation or a confidentiality agreement,

24   Plaintiffs are not entitled to compensation for their idea. It is "forever the common

25   property of artistic mankind." *Zella, supra,* 529 F.Supp.2d at 1133-34.

26        Plaintiffs' unjust enrichment claim fails for an additional and independent

27   reason: "There is no cause of action in California for unjust enrichment." *Durell v.*

28   *Sharp Healthcare*, 183 Cal.App.4[th] 1350, 1370 (2010); *see also McKell v.*

16

1   *Washington Mutual Bank,* 142 Cal.App.4ᵗʰ 1457, 1490 (2006) ("There is no cause

2   of action for unjust enrichment.").

3       **F.      Plaintiffs Fail To State A Claim For *Quantum Meruit***

4           For the reasons discussed above, Plaintiffs' claim for *quantum meruit* fails.

5   Their unsolicited disclosure of their project idea eliminated their right to

6   compensation and the idea itself was not protectable. *See Klekas, supra,* 150

7   Cal.App.3d at 1111 ("The material allegedly used by defendants must also

8   constitute protectable property if plaintiff is entitled to recover in quasi-contract.").

9           Moreover, to succeed on a claim for *quantum meruit,* Plaintiffs must

10  establish, among other things, that that they were acting pursuant to an express or

11  implied request for such services from Defendants. *See Advanced Choices, Inc. v.*

12  *Department of Health Services,* 182 Cal.App.4ᵗʰ 1661, 1673 (2010).  Plaintiffs fail

13  to allege facts sufficient to show any such agreement or request for services from

14  Defendants.  To the contrary, we know that Plaintiffs allege that they sent their

15  proposal to Defendants unsolicited and received no response.  (Compl. at ¶¶ 12-14)

16  We also know that USPGT, and not Defendants, allegedly agreed to televise the

17  event.  (*Id.* at ¶ 17)  All Defendants allegedly agreed to do was lend their name to

18  one event to be held at an affiliated golf course in Florida.  (*Id.* at ¶¶ 22, 27)

19  Accordingly, none of the facts alleged would justify recovery in *quantum meruit.*

20      **G.      Plaintiffs Fail To State A Claim For An Accounting**

21          "A cause of action for an accounting requires a showing that a relationship

22  exists between the plaintiff and defendant that requires an accounting, and that

23  some balance is due the plaintiff that can only be ascertained by an accounting."

24  *Teselle v. McLoughlin,* 173 Cal.App.4ᵗʰ 156, 179 (2009).  But, it is not a stand-

25  alone claim for relief.  "A right to an accounting is derivative; it must be based on

26  some other claims." *County of Santa Clara v. Astra United States, Inc.,* 428

27  F.Supp.2d 1029, 1037 (N.D. Cal. 2006) (quoting *Janis v. Cal. State Lottery*

28  *Comm'n,* 68 Cal.App.4ᵗʰ 824, 833 (1998)).  In this case, for the reasons set forth

17

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1   herein, Plaintiffs have failed to plead a viable substantive claim for relief against

2   Defendants; and therefore, Plaintiffs' accounting claim must fall with the rest of its

3   complaint.

4   **H.**    **Plaintiffs Fail To State A Claim For Unfair Business Practices**

5         **Under Section 17200**

6       As discussed elsewhere in this motion, Plaintiffs have failed to allege facts

7   showing that any of the Defendants acted unlawfully, unfairly or fraudulently.

8   Accordingly, there is no basis for asserting a claim under Section 17200. *See, e.g.,*

9   *Gonzalez v. Proctor and Gamble Co.,* 247 F.R.D. 616, 625 (S.D. Cal. 2007) ("A

10   plaintiff bringing suit under the UCL must 'establish that the practice is either

11   unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any

12   benefit) or fraudulent (i.e., is likely to deceive members of the public).'")

13       Plaintiffs also lack standing to assert a Section 17200 claim.  After the

14   adoption of Proposition 64, plaintiffs cannot assert claims under Section 17200

15   unless they allege they personally suffered the required injury in fact and lost

16   money or property as a result of the alleged unfair competition.  *See* Cal. Bus. &

17   Prof. Code § 17204.  Moreover, the required injury in fact is not simple money

18   damages.  "Because remedies for individuals under [Section 17200] are restricted to

19   injunctive relief and restitution, the import of the requirement is to limit standing to

20   individuals who suffer losses of money or property that are eligible for restitution."

21   *Buckland v. Threshold Enterprises, Ltd.,* 155 Cal.App.4[th] 798, 817 (2007).  Money

22   is restitutionary only if it would "replace any money or property that defendants

23   took directly from plaintiff."  *Korea Supply Co. v. Lockheed Martin Corp.,* 29

24   Cal.4[th] 1134, 1149 (2003).

25       Here, Plaintiffs do not allege that Defendants took any money directly from

26   Plaintiffs for which they would be entitled to restitution.  This is a pure damages

27   claim.  Accordingly, Plaintiffs cannot state a claim under Section 17200.  *See*

28   *Citizens of Humanity, LLC v. Costco Wholesale Corp.,* 171 Cal.App.4[th] 1, 22

1   (2009) ("As [plaintiff] could not allege having suffered losses which would entitle

2   it to restitution, it has no standing to pursue a cause of action for unfair

3   competition.")

4   **I.**      **Plaintiffs Fail To State A Claim For Declaratory Relief**

5          Lastly, in their eighth claim for relief, Plaintiffs purport to state a claim for

6   declaratory relief. This claim for relief is completely duplicative of the previous

7   seven.  Because the declaratory relief claim adds nothing, it should be dismissed.

8   *See Jensen v. Quality Loan Service Corp.*, ___ F.Supp.2d ___, 2010 WL 1136005

9   at *4 (E.D. Cal. Mar. 22, 2010) ("[W]here a plaintiff has alleged a substantive cause

10  of action, a declaratory relief claim should not be used as a superfluous, second

11  cause of action for the determination of identical issues, subsumed within the

12  first."); *Philips Med. Capital, LLC v. Medical Insights Diagnostic Center, Inc.*, 471

13  F.Supp.2d 1035, 1048 (N.D. Cal. 2007) ("[A] court may decline to hear a claim for

14  declaratory relief if adjudication of the issues raised in other claims would fully and

15  adequately determine all matters actually in controversy between the parties.")

16  Moreover, for the reasons discussed herein, Plaintiffs have not alleged a factual

17  predicate entitling them to the relief requested.

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1

## V.   <u>CONCLUSION</u>

2   For the reasons set forth herein, the complaint against Donald J. Trump, The

3   Trump Organization, Inc. and Trump Golf Management LLC should be dismissed

4   for a lack of personal jurisdiction.  The complaint should also be dismissed for

5   failing to state a claim upon which relief can be granted.

6

7   DATED:  August 2, 2010                 HODEL BRIGGS WINTER LLP
                                         MATTHEW A. HODEL

8                                            MICHAEL S. LEBOFF

9

10                          By: <u>/s/ Matthew A. Hodel</u>
                                MATTHEW A. HODEL

11                          Attorneys for Defendant
                       DONALD J. TRUMP, THE TRUMP

12                          ORGANIZATION, INC. and TRUMP
                       GOLF MANAGEMENT LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**